# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ZAKARIA HAQUE
90 2nd Street
Fairfield, CT 06825,

individually and on behalf of all those similarly
situated,

                    Plaintiffs,

                    v.

CAPITAL ONE FINANCIAL CORPORATION,
1680 Capital One Dr.
McLean, VA 22102,

CAPITAL ONE, NATIONAL ASSOCIATION,
1680 Capital One Dr.
McLean, VA 22102,

and

CAPITAL ONE BANK (USA), NATIONAL
ASSOCIATION,
4851 Cox Road
Glen Allen, VA 23060,

                    Defendants.

Civil Action No. 19-_____

**COMPLAINT – CLASS ACTION**

**<u>JURY TRIAL DEMANDED</u>**

Plaintiff Zakaria Haque ("Plaintiff"), individually and on behalf of all others similarly situated, through the undersigned counsel, hereby alleges the following, against Defendants Capital One Financial Corporation; Capital One, National Association; and Capital One Bank (USA), National Association (collectively, "Capital One" or "Defendants"). Based upon personal knowledge, information, belief, and investigation of counsel, Plaintiff specifically alleges as follows:

## SUMMARY OF THE CASE

1.      Plaintiff brings this action on behalf of a nationwide class against Defendants because of their failure to protect the confidential information of millions of consumers and small businesses – including financial information (*e.g.*, bank account numbers, fragments of transaction history, self-reported income, and credit scores), and/or personal information (*e.g.*, Social Security numbers, names, addresses, phone numbers, email addresses, and dates of birth) (collectively, their "Sensitive Information"). Defendants' wrongful disclosure has harmed Plaintiff and the Class, believed to include approximately 100 million card customers and applicants.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d) in that: (1) this is a class action involving more than 1,000 class members; (2) minimal diversity is present as Plaintiff is a citizen of Connecticut (and the proposed class members are from various states), while Defendants are citizens of Virginia; and (3) the amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs.

3.      This Court has personal jurisdiction over Defendants.  Defendants carry on a continuous and systematic part of their general business within the Commonwealth of Pennsylvania.  Among other things, while Defendants market their credit card products throughout the United States and their credit card loan portfolio is "geographically diversified due to [their] product and marketing approach," Pennsylvania is one of seven states in which Defendants' credit card loan portfolio has a particularly high concentration.[1]  In addition, Defendants have a brick-and-mortar presence in this district with a "Capital One Café" at 135 S.

---

[1]    Capital One's 2018 Annual Report, available at http://phx.corporate-ir.net/phoenix.zhtml?c=70667&p=irol-irhome, at 78 (last accessed Aug. 2, 2019).

17th Street, Suite A, Philadelphia, PA 19103.  (A photograph of that café is featured in
Defendants' 2018 Annual Report posted on the Investor Relations portion of their website.[2])
Capital One cardholders can access their accounts through over a dozen "Allpoint Network"
ATMs in the City of Philadelphia.

4.      Venue is proper in this District pursuant to: (1) 28 U.S.C. § 1391(b)(2) in that a
substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this
District, and (2) 28 U.S.C. § 1391(b)(3) in that Defendants are subject to personal jurisdiction in
this District.

## PARTIES

5.      Plaintiff Zakaria Haque is an individual residing in Fairfield, Connecticut, who
has been a credit card and automobile loan customer of Capital One and whose Sensitive
Information, on information and belief, was compromised in the Data Breach described herein.

6.      Defendant Capital One Financial Corporation is a Delaware corporation with its
principal place of business in McLean, Virginia.

7.      Defendant Capital One, National Association ("CONA") is a national bank with
its principal place of business in McLean, Virginia. Defendant CONA is a wholly-owned
subsidiary of Capital One Financial Corporation.

8.      Defendant Capital One Bank (USA), National Association ("COBNA") is a
national bank with its principal place of business in McLean, Virginia. Defendant COBNA is a
wholly-owned subsidiary of Capital One Financial Corporation.

---

[2]   *Id.*, at page prior to Chairman's Letter to Shareholders and Friends.

## FACTUAL BACKGROUND

9.      Defendant Capital One Financial Corporation, through its subsidiaries, including

Defendants CONA and COBNA, is one of the largest credit-card issuers in the United States,

and one of the top 10 largest banks based on deposits, serving approximately 45 million

customer accounts.

10.     On July 29, 2019, Capital One publicly announced that ten days earlier, on July

19, 2019, it had "determined there was unauthorized access by an outside individual who

obtained certain types of personal information relating to people who had applied for its credit

card products and to Capital One credit card customers."  Its statement continued:

> Based on our **analysis to date**, this event affected approximately
> 100 million individuals in the United States and approximately 6
> million in Canada.
>
> . . . .
>
> The largest category of information accessed was information on
> consumers and small businesses as of the time they applied for one
> of our credit card products from 2005 through early 2019.[3]

11.     Capital One further disclosed that the breached Sensitive Information included:

    a.      Personal information, including names, addresses, zip codes/postal codes,

            phone numbers, email addresses, dates of birth, and self reported income;

    b.       Customer status data, *e.g.,* credit scores, credit limits, balances, payment

             history, contact information;

    c.      Fragments of transaction data from a total of 23 days during 2016, 2017,

            and 2018;

---

[3]     *Capital One Announces Data Security Incident*, Capital One, http://phx.corporate-ir.net/phoenix.zhtml?c=70667&p=irol-newsArticle_Print&ID=2405042 (emphasis added) (last accessed Aug. 2, 2019).

d.      About 140,000 Social Security numbers of its credit card customers; and

e.      About 80,000 linked bank account numbers of its secured credit card customers.

12.      Defendants did not learn of the Data Breach that had occurred on March 22 and 23, 2019 until July 17, 2019, and publicly disclosed it almost two weeks later, on July 29, 2019, over four months after the Sensitive Information of over 100 million customers and credit card applicants was breached. Defendants apparently continued to allow the hacker to intrude their systems at least until April 21, 2019.

13.      Defendants only discovered the Data Breach after an individual previously unknown to Capital One sent the following email to Capital One providing a link to a file containing the leaked Sensitive Information. The file provided in the link, which was timestamped April 21, 2019, also contained code for commands used in the intrusion, as well as a list of more than 700 folders or buckets of data.



14.      Defendants had obligations, arising from federal and state laws, industry standards, and promises made to credit card applicants and customers like Plaintiff and other Class Members, to keep the Sensitive Information confidential and to protect it from

unauthorized disclosures. Class Members provided their Sensitive Information to Capital One

with the understanding that Capital One and any business partners to whom Capital One

disclosed the Sensitive Information would comply with their obligations to keep such

information confidential and secure from unauthorized disclosures.

15.    Capital One promises customers that it will keep their Sensitive Information

confidential, explicitly assuring customers on its credit card applications that "Capital One uses

256-bit Secure Sockets Layer (SSL) technology. This means that when you are on our website,

the data transferred between Capital One and you is encrypted and cannot be viewed by any

other party."[4]

16.    Defendants' security failures demonstrate that they failed to honor their duties and

promises by:

    a.    not maintaining an adequate data security system to reduce the risk of data
        breaches and cyber-attacks;

    b.    not adequately monitoring their systems to identify the data breaches and
        cyber-attacks; and

    c.    not adequately protecting Plaintiff's and the Class's Sensitive Information.

17.    Plaintiff and other Class Members have been injured by the disclosure of their

Sensitive Information in the Data Breach.

18.    Defendants' data security obligations and promises were particularly important

given the hundreds of data breaches reported each year, many of which were widely known to

the public and to anyone in Defendants' industries.

---

[4]    *See e.g.,* information at "Security" icon on application for Venture credit card,
    https://applynow.capitalone.com/?productId=6691 (last visited Aug. 2, 2019) (emphasis
    added).

19.     The Federal Trade Commission ("FTC") has warned businesses and consumers for years that data security "is of critical importance to consumers. If companies do not protect the personal information they collect and store, that information could fall into the wrong hands, resulting in fraud and other harm, along with a potential loss of consumer confidence in particular business sectors or entities, payment methods, or types of transactions."[5]

20.     Data breaches allow thieves access to Sensitive Information they can use for many fraudulent and harmful purposes, including to open financial accounts, receive government benefits, incur charges and credit in the victim's name, apply for jobs, rent a dwelling or office, file false tax returns, obtain a driver's license or official identification card in the victim's name but with the thief's picture, and receive medical services in the victim's name. Identity thieves may even give the victim's personal information to police during an arrest, resulting in an arrest warrant being issued in the victim's name.[6]

21.     Identity theft, which the FTC describes as a "pernicious crime that harms both consumers and financial institutions,"[7] can be especially harmful because it often takes some time for the victim to become aware of the theft, the theft can cause substantial harm to the victim's credit rating, and the fraudulent use can continue for years.

22.     Victims of identity theft face substantial costs, inconvenience, and hardship in repairing damage to their credit records and their good name, restoring access to account funds,

---

[5]     *Prepared Statement of the Federal Trade Commission on Protecting Consumer Information: Can Data Breaches Be Prevented,* The Committee on Energy and Commerce, Subcommittee on Commerce, Manufacturing, and Trade, United States House of Representatives, at 2 (Feb. 5, 2014) ("*2014 FTC Statement*").

[6]     *See Warning Signs of Identity Theft*, Federal Trade Commission, https://www.identitytheft.gov/Warning-Signs-of-Identity-Theft (last accessed Aug. 2, 2019).

[7]     *2014 FTC Statement,* at 1.

and redirecting preauthorized payments and deposits.  Identity theft victims frequently are

required to spend many hours and large amounts of money repairing the impact to their credit.

      23.     The FTC maintains the primary repository of identity theft complaints for the

United States.  For at least twenty years, identity theft has been among the top three complaints

received by the FTC.[8]  Since at least 2014, credit card fraud and tax identity theft (in which

thieves use stolen Social Security numbers and other Sensitive Information to steal consumers'

tax refunds), have been among the most common types of identity theft reported to the FTC.[9]

      24.     Defendants had ample warnings of weaknesses and risks to their systems, as they

have had multiple security breaches in the past. Defendants have issued formal letters to an

undisclosed number of customers informing them that their personal information may have been

breached, including letters issued on or about October 27, 2014, July 28, 2017, July 31, 2017,

and September 12, 2017.

      25.     Sensitive Information is such a valuable commodity to identity thieves that once

the information has been compromised, criminals often trade the information on the "cyber

black-market" for years. As a result of recent large-scale data breaches, identity thieves and

---

[8]   *Id.* at 8.

[9]   *Id.*; https://www.ftc.gov/news-events/press-releases/2019/02/imposter-scams-top-complaints-made-ftc-2018 (last accessed Aug. 2, 2019); https://www.ftc.gov/news-events/press-releases/2018/03/ftc-releases-annual-summary-complaints-reported-consumers (last accessed Aug. 2, 2019); https://www.ftc.gov/news-events/press-releases/2017/03/ftc-releases-annual-summary-consumer-complaints (last accessed Aug. 2, 2019).

cyber-criminals have openly posted stolen credit card numbers, SSNs, and other Sensitive

Information directly on various Internet websites making the information publicly available.

26.     Indeed, data breaches and identity theft have a crippling effect on individuals and

detrimentally impact the entire economy as a whole. Financial databases are especially valuable

to identity thieves.

## CLASS ALLEGATIONS

27.     In accordance with Federal Rules of Civil Procedure 23(b)(2) and (b)(3), Plaintiff

brings this case as a class action on behalf of a Class defined as follows:

> All persons in the United States whose Sensitive Information was
> maintained on the servers of Capital One and the cloud computing
> company used by Capital One that were compromised as a result
> of the breach announced by Capital One on or around July 29,
> 2019.

28.     The Class is so numerous that joinder of all members is impracticable. On

information and belief, the Class has more than 100 million members. Moreover, the disposition

of the claims of the Class in a single action will provide substantial benefits to all parties and the

Court.

29.     There are numerous questions of law and fact common to Plaintiff and Class

Members. These common questions of law and fact include, but are not limited to, the following:

a.     Whether Defendants' data security systems prior to the Data Breach

complied with all applicable legal requirements;

b.      Whether Defendants' data security systems prior to the Data Breach met

industry standards;

c.      Whether Plaintiff's and other Class members' Sensitive Information was

compromised in the Data Breach; and

        d.      Whether Plaintiff and other Class members are entitled to damages as a result of Defendants' conduct.

30.     Plaintiff's claims are typical of the claims of the Class's claims. Plaintiff suffered the same injury as Class Members – *i.e.*, upon information and belief, Plaintiff's Sensitive information was compromised in the Data Breach.

31.     Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained competent and capable attorneys with significant experience in complex and class action litigation. Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Class and have the financial resources to do so. Neither Plaintiff nor his counsel has interests that are contrary to or that conflict with those of the proposed Class.

32.     Defendants have engaged in a common course of conduct toward Plaintiff and other Class Members. The common issues arising from this conduct that affect Plaintiff and Class Members predominate over any individual issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

33.     A class action is the superior method for the fair and efficient adjudication of this controversy. Class Members' interests in individually controlling the prosecution of separate actions are low given the magnitude, burden, and expense of individual prosecutions against large corporations such as Defendants. It is desirable to concentrate this litigation in this forum to avoid burdening the courts with individual lawsuits. Individualized litigation presents a potential for inconsistent or contradictory judgments, and would also increase the delay and expense to all parties and the court system given the number of people affected by Defendants' actions and inaction and the legal and factual issues of this case. By contrast, the class action procedure here will have no management difficulties. Defendants' records and the records available publicly

will easily identify the Class Members. The same common documents and testimony will be used to prove Plaintiff's claims and those of the Class.

34.     A class action is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to Class Members, so that final injunctive relief or corresponding declaratory relief is appropriate as to all Class Members.

## FIRST COUNT
### Negligence

35.     Plaintiff realleges and incorporates by reference all preceding factual allegations.

36.     Capital One required Plaintiff and Class Members to submit non-public Sensitive Information to apply for a credit card.

37.     By collecting and storing this data, and sharing it and using it for commercial gain, Defendants had a duty of care to use reasonable means to secure and safeguard this Sensitive Information, to prevent disclosure of the information, and to guard the information from theft.

38.     Defendants' duty included a responsibility to implement a process by which they could detect a breach of their security systems in a reasonably expeditious period of time and give prompt notice to those affected in the case of a data breach.

39.     Defendants also owed a duty of care to Plaintiff and members of the Class to provide security consistent with industry standards and the other requirements discussed herein, and to ensure that their systems and networks—and the personnel responsible for them—adequately protected their existing and potential customers' Sensitive Information.

40.     Only Defendants were in a position to ensure that their systems were sufficient to protect against the harm to Plaintiff and the members of the Class from a data breach.

41.    Defendants breached their duty by failing to use reasonable measures to protect Plaintiff's and Class Members' Sensitive Information.

42.    The specific negligent acts and omissions committed by Defendants include, but are not limited to, the following:

a.    failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiff's and Class Members' Sensitive Information;

b.    failing to adequately monitor the security of Defendants' networks and systems;

c.    allowing unauthorized access to Plaintiff's and Class Members' Sensitive Information;

d.    failing to recognize in a timely manner that Plaintiff's and other Class Members' Sensitive Information had been compromised; and

e.    failing to accurately notify Plaintiff and Class Members of the Data Breach in a timely manner.

43.    It was foreseeable that Defendants' failure to use reasonable measures to protect and monitor the security of Sensitive Information would result in injury to Plaintiff and other Class Members. Further, the breach of security, unauthorized access, and resulting injury to Plaintiff and the members of the Class were reasonably foreseeable.

44.    It was therefore foreseeable that the failure to adequately safeguard Sensitive Information would result in one or more of the following injuries to Plaintiff and the members of the proposed Class: ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen

confidential data; the illegal sale of the compromised data on the deep web black market; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts; decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

45.     Accordingly, Plaintiff, individually and on behalf of all those similarly situated, seeks an order declaring that Defendants' conduct constitutes negligence and awarding damages in an amount to be determined at trial.

## SECOND COUNT
### Negligence Per Se

46.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

47.     Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, prohibits "unfair or deceptive acts or practices in or affecting commerce."  The FTC has charged companies with unfair practices under Section 5 for failing to reasonably safeguard consumer data, and with "deceptive acts or practices" in violation of Section 5 for making "express and implied claims that they provide reasonable security for consumers' personal data" but not employing "available, cost-effective security measures to minimize or reduce data risks."  Various FTC publications and orders also form the basis of Defendants' duty.[10]

---

[10]   *Prepared Statement of the Federal Trade Commission on Protecting Consumer Information: Can Data Breaches Be Prevented,* The Committee on Energy and Commerce, Subcommittee on Commerce, Manufacturing, and Trade, United States House of Representatives, at 3-4 (Feb. 5, 2014).

48.     Defendants violated Section 5 of the FTC Act (and similar state statutes) by failing to use reasonable measures to protect Personal Information and not complying with industry standards.

49.     Defendants' violations of Section 5 of the FTC Act (and similar state statutes) constitute negligence per se.

50.     Class members are consumers within the class of persons Section 5 of the FTC Act (and similar state statutes) was intended to protect.

51.     Moreover, the harm that has occurred is the type of harm the FTC Act (and similar state statutes) was intended to guard against. Indeed, the FTC has pursued over fifty enforcement actions against businesses which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiff and the Class.[11]

52.     As a direct and proximate result of Defendants' negligence, Plaintiff and Class members have been injured and are entitled to damages, including compensatory, punitive, and nominal damages, in an amount to be proven at trial.

**THIRD COUNT**
**Breach of Implied-in-Fact Contract**

53.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

54.     When Plaintiff and Class members paid money or provided their Sensitive Information to Defendants in exchange for services, they entered into implied contracts with

---

[11]     *2014 FTC Statement*, at 2-3.

Defendants pursuant to which Defendants agreed to safeguard and protect such information and to timely and accurately notify them if their data had been breached and compromised.

55.     Defendants solicited and invited prospective clients and other consumers to provide their Sensitive Information as part of Defendants' regular business practices. These individuals accepted Defendants' offers and provided their Sensitive Information to Defendants. In entering into such implied contracts, Plaintiff and the Class assumed that Defendants' data security practices and policies were reasonable and consistent with industry standards, and that Defendants would use part of the funds received from Plaintiff and the Class to pay for adequate and reasonable data security practices.

56.     Plaintiff and the Class would not have provided and entrusted their Sensitive Information to Defendants in the absence of the implied contract between them and Defendants to keep the information secure.

57.     Plaintiff and the Class fully performed their obligations under the implied contracts with Defendants.

58.     Defendants breached their implied contracts with Plaintiff and the Class by failing to safeguard and protect their Sensitive Information and by failing to provide timely and accurate notice that their personal information was compromised as a result of a data breach.

59.     As a direct and proximate result of Defendants' breaches of their implied contracts, Plaintiff and the Class sustained actual losses and damages as described herein.

WHEREFORE, Plaintiff and Class Members demand judgment as follows:

A.     Certification of the action as a Class Action pursuant to Federal Rule of Civil Procedure 23, and appointment of Plaintiff as Class Representative and his counsel of record as Class Counsel;

B.      A declaration and decree that the acts alleged herein constitute negligence *per se;*

C.      Judgment against Defendants for the damages sustained by Plaintiff and the Class defined herein, and for any additional damages, penalties, and other monetary relief provided by applicable law;

D.      An award to Plaintiff and Class Members of pre-judgment and post-judgment interest as provided by law, at the highest legal rate from and after the date of service of the Complaint in this action;

E.      The costs of this suit, including reasonable attorney fees; and

F.      Such other and further relief as the Court deems just and proper.

### JURY TRIAL DEMANDED

Plaintiff, individually and on behalf of all those similarly situated, hereby requests a jury trial, pursuant to Federal Rule of Civil Procedure 38, on any and all claims so triable.


Dated: August 2, 2019                Respectfully submitted,


Roberta D. Liebenberg (PA ID 31738)
Mary L. Russell (PA ID 58581)
Ria C. Momblanco (PA ID 201818)
FINE, KAPLAN AND BLACK, RPC
One South Broad Street, 23rd Floor
Philadelphia, PA  19107
(215) 567-6565
rliebenberg@finekaplan.com
mrussell@finekaplan.com
rmomblanco@finekaplan.com

16

Adam Frankel
GREENWICH LEGAL ASSOCIATES, LLC
881 Lake Avenue
Greenwich, CT 06831
(203) 622-6001
adam@grwlegal.com

*Counsel for Plaintiff and the*
*Proposed Class*